**In re ADELPHIA COMMUNICATIONS CORP., et al., Debtors.**

No. M47 (SAS).

United States District Court,
S.D. New York.

Sept. 29, 2005.

J. Christopher Shore, Gerard Uzzi, Douglas P. Baumstein, White & Case LLP, New York City, for the Ad Hoc Committee of Arahova Noteholders.

Brian E. O'Connor, Terence K. McLaughlin, Willkie Farr & Gallagher

LLP, New York City, for the Debtors and Debtors-in-Possession.

Peter D. Morgenstern, Gregory A. Blue, Eric B. Fisher, Andrew Buck, Bragar Wexler Eagel & Morgenstern, P.C., New York City, for the Official Committee of Equity Security Holders.

Bruce Bennett, James O. Johnston, Hennigan, Bennett & Dorman LLP, Los Angeles, CA, for the Ad Hoc Committee of ACC Senior Noteholders.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

The Ad Hoc Committee of Arahova Noteholders ("Arahova Committee") requests leave to file an expedited appeal from four orders of the Bankruptcy Court of the Southern District of New York in the jointly administered chapter 11 cases of Adelphia Communications Corp. ("ACC") and more than 200 of its direct and indirect subsidiaries.[1] The Orders relate to a process established by the Bankruptcy Court to resolve certain disputes as an adjunct to confirmation of the debtors' joint plan of reorganization. The Arahova Committee also moves for a stay of the Orders pending resolution of the appeal. The debtors, the Ad Hoc Committee of ACC Senior Noteholders, and the Official Committee of Equity Security Holders[2] oppose the motions on the grounds that the Orders are interlocutory and that the circumstances do not merit the exercise of this Court's discretionary jurisdiction. For the following reasons, the Arahova Committee's motions for leave to appeal and for a stay pending appeal are denied.

## I. BACKGROUND

The dollar figures in this dispute are high, the issues are complex, and the deadlines are short. The debtors, formerly the fifth largest cable company in the United States, filed for chapter 11 protection in June 2002.[3] More than three billion dollars in claims have since been asserted against their estates.[4] In April 2005, the debtors agreed to a sale of assets to Time Warner N.Y. Cable LLC and Comcast

---

**1.** The Orders appealed are the:

(1) Order Denying Motion of the Ad Hoc Committee of Arahova Noteholders for Entry of an Order (i) Striking Debtors' May 2005 Amendment to Schedules of Liabilities for Failure to Comply with 11 U.S.C. § 521(1) and Fed. Bankr.R. 1007, 1008 and 3003, (ii) Establishing Intercompany Claims Bar Date Pursuant to Fed. Bankr.R. 3003(c)(3); and (iii) Granting Related Relief;

(2) Order Denying Motion of the Ad Hoc Committee of Arahova Noteholders Pursuant to 11 U.S.C. §§ 105(a) and 1109(b) for Entry of an Order (i) Granting Leave, Standing and Authority to Prosecute Intercompany Claims and Causes of Action on Behalf of Arahova Communications, Inc. and its Subsidiary Debtors; (ii) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1); and (iii) Granting Related Relief;

(3) Order Denying Ad Hoc Committee of Arahova Noteholders' Motion to Compel, or in the Alternative, to Strike the Factual Asser-

tions Contained in Debtors' Reply in Opposition to Motions of the Ad Hoc Committee of Arahova Noteholders; and

(4) Order in Aid of Confirmation, Pursuant to Sections 105(a) and 105(d) of the Bankruptcy Code, Establishing Pre–Confirmation Process to Resolve Certain Inter–Creditor Issues ("Order in Aid").

The Bankruptcy Court entered each Order on August 4, 2005.

**2.** The Official Committee of Equity Security Holders has filed an objection to clarify that it opposes the Arahova Committee's motions.

**3.** See *Adelphia Communications Corp. v. Rigas (In re Adelphia Communications Corp.)*, No. 04 Civ. 2817, 2004 WL 2186582, at *1–2 (S.D.N.Y. Sept. 27, 2004).

**4.** See Debtors' Memorandum of Law in Opposition to the Motion of the Ad Hoc Committee of Arahova Noteholders for Leave to File an Appeal ("Debtors' Mem.") at 3.

Corporation for approximately $17.6 billion.[5] If the Time Warner/Comcast sale does not close by July 31, 2006, the debtors stand to lose the purchase price, and may be required to pay a "break-up" fee of $440 million.[6] A condition of the closing is timely confirmation of the debtors' plan of reorganization by the Bankruptcy Court.[7]

The debtors' plan of reorganization proposes that the proceeds from the sale be distributed to creditors of nine groups of substantively consolidated debtors.[8] Claims against debtors in all but two of these groups will be paid in full.[9] The percentage of recovery on claims against the groups including debtors ACC and Arahova Communications, Inc. ("Arahova") are uncertain.[10] Members of the Ad Hoc Committee of Arahova Noteholders hold, or advise holders of, $550 million in senior notes issued by Arahova.[11] Member of the Ad Hoc Committee of ACC Senior Noteholders hold, or advise holders of, $1.7 billion in Senior Notes issued by ACC.[12] The resolution of issues regarding inter-debtor claims, allocation of value from the sale transactions among debtors, allocation of liabilities to the debtors, and substantive consolidation of debtors, will affect the ultimate recoveries of these noteholders.[13]

To correct accounting irregularities, the debtors have restated approximately seven million lines of inter-debtor transactions on their financial statements.[14] These restatements are reflected on the debtors' schedules of intercompany liabilities, amended in May, 2005.[15] On June 16, 2005, the Arahova Committee filed its Motion to Strike, which sought an order striking the intercompany schedules.[16] The Arahova Committee argued that the intercompany balances listed on the schedules were disputed claims, and that the schedules did not comply with the formal requirements for claims under the Bankruptcy Rules.[17]

On June 24, 2005, the debtors filed their Motion in Aid, which proposed a set of procedures to resolve inter-debtor issues as an adjunct to the plan confirmation process, including discovery obligations, deadlines, dates for briefing, and hearings to adjudicate inter-debtor issues.[18] In the

5. *See id.* at 3–4.

6. *See id.* at 4.

7. *See id.* at 5.

8. *See id.* at 4.

9. *See id.*

10. *See id.*

11. *See* Memorandum of Law of Ad Hoc Committee of Arahova Noteholders in Support of Motion for Leave to File an Expedited Appeal ("Arahova Committee Mem.") at 1.

12. *See* Objection of Ad Hoc Committee of ACC Senior Noteholders to Ad Hoc Committee of Arahova Noteholders' Motion for Leave to File Expedited Appeal at 1.

13. *See* Debtors' Mem. at 4.

14. *See id.* at 3.

15. *See id.*

16. *See* Motion of the Ad Hoc Committee of Arahova Noteholders for Entry of Order (i) Striking Debtors' May 2005 Amendment to Schedules of Liabilities for Failure to Comply with 11 U.S.C. § 521(1) and Fed. Bankr.R. 1007, 1008 and 3003, (ii) Establishing Intercompany Claims Bar Date Pursuant to Fed. Bankr.R. 3003(c)(3); and (iii) Granting Related Relief; and, in the Alternative, Preliminary Objection of the Ad Hoc Committee of Arahova Noteholders Pursuant to 11 U.S.C. §§ 105 and 502 and Fed. Bankr.R. 3007 to Intercompany Claims Against Arahova Debtors.

17. *See id.*

18. *See* Debtors' Motion for Order in Aid of Confirmation, Pursuant to Sections 105(a) and 105(d) of the Bankruptcy Code, Establish-

Motion in Aid, the debtors took no position on any particular inter-debtor issue, but rather, turned resolution of disputes over to affected creditor bodies.[19]

On July 2, 2005, the Arahova Committee filed its Standing Motion, seeking authority to prosecute certain avoidance actions of inter-debtor transactions on behalf of the debtor Arahova.[20] The Arahova Committee estimates that these claims are worth between $1.5 and $2 billion to the Arahova estate.[21] The Arahova Committee argues that participation as a debtor has advantages over participation as a creditor, including access to privileged information, the ability to hire professionals paid by the estate, and entitlement to an appeal without posting a bond.[22]

On July 12, 2005, the Bankruptcy Court held a hearing at which counsel to the Arahova Committee argued that the Motion in Aid was inadequate because "somebody performing fiduciary duties for the benefit of each estate is elemental and fundamental to the success of the chapter 11 process."[23] Judge Gerber requested that the parties address the question of "whether the estate needs more fiducia-

ries" at a hearing to be held on July 26, 2005.[24]

On July 21, 2005, the Arahova Committee objected to the Motion in Aid and proposed an alternative order which required that each debtor identify and assert claims and defenses in the inter-debtor disputes, that each of the over 200 debtor estates appoint at least one independent fiduciary, and that each conflicted debtor be represented by separate counsel.[25]

On July 22, 2005, the Arahova Committee filed its Motion to Compel, which sought to compel responses to requests for discovery in connection with the Motion in Aid and the Motion to Strike.[26] The debtors objected that these discovery requests required production of the very documents that the discovery plan contained in the Motion in Aid was intended to address.[27] On July 25, 2005, the Bankruptcy Court denied the Motion to Compel.

On July 26, 2005, the Bankruptcy Court held a hearing on *In re Adelphia* which commenced at 9:45 a.m. and did not conclude until approximately 8:30 p.m.[28] The Bankruptcy Court heard argument on the

---

ing Pre–Confirmation Process to Resolve Certain Inter–Creditor Issues.

**19.** *See id.*

**20.** *See* Motion of the Ad Hoc Committee of Arahova Noteholders for Entry of Order (i) Granting Leave, Standing and Authority to Prosecute Intercompany Claims and Causes of Action on Behalf of Arahova Communications Inc. and its Subsidiary Debtors; (ii) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1); and (iii) Granting Related Relief.

**21.** *See* Arahova Committee Mem. at 12.

**22.** *See* 9/20/05 Transcript of Oral Argument before Hon. Shira A. Scheindlin ("9/20/05 Tr.") at 16:22–19:3.

**23.** 7/12/05 Transcript of Status Conference before Hon. Robert E. Gerber at 61:24–62:5.

**24.** *Id.* at 127:23–128:5.

**25.** *See* Scheduling Order, Ex. A to Objection of the Ad Hoc Committee of Arahova Noteholders to Debtors' Motion for Order in Aid of Confirmation, Pursuant to Sections 105(a) and 105(d) of the Bankruptcy Code, Establishing Pre–Confirmation Process to Resolve Certain Inter–Creditor Issues (the "Objection").

At present, all of the affiliated debtors are represented by Willkie, Farr & Gallagher, LLP.

**26.** *See* Motion to Compel, or in the Alternative, to Strike the Factual Assertions Contained in Debtors' Reply in Opposition to Motions of the Ad Hoc Committee of Arahova Noteholders.

**27.** *See* Debtors' Mem. at 6.

**28.** *See id.* at 7.

Motion in Aid from numerous parties in interest.[29] At the close of the hearing, the Bankruptcy Court granted the Motion in Aid, with certain modifications, and denied the Arahova Committee's Motion to Strike and Standing Motion.[30] The Bankruptcy Court reasoned that the process established by the Order in Aid would provide a full opportunity for the Arahova Committee to address the matters raised in the Standing Motion and the Motion to Strike.[31]

The Arahova Committee now seeks leave to appeal, arguing that the procedures established by the Bankruptcy Court to resolve the inter-debtor issues contravene the provisions of the Bankruptcy Code by failing to require that each debtor-in-possession be charged with fiduciary duties to maximize value for its respective creditors.[32] Oral argument on this motion was held on September 20 and 21, 2005. At oral argument, the Arahova Committee also argued that certain of the Orders were final orders, which may be appealed as of right.[33]

## II. LEGAL STANDARD

### A. Final Orders

■ The district courts are vested with appellate jurisdiction over bankruptcy court rulings.[34] Final orders of the bankruptcy court may be appealed to the district court as of right.[35] In *In re Palm Coast, Matanza Shores Limited,* the Court of Appeals held that an order is final if "nothing in the order ... indicates any anticipation that the decision will be reconsidered." [36] "A bankruptcy court's order is 'final' if it 'completely resolve[s] all of the issues pertaining to a discrete claim, including issues as to the proper relief.'" [37]

■ Courts have held that a bankruptcy court order is final if it confirms a plan, denies relief from an automatic stay, authorizes a sale of property, allows an extension of credit, or approves the assumption or assignment of an executory

---

29. *See* 7/26/05 Transcript of Hearing before Hon. Robert E. Gerber ("7/26/05 Tr.").

30. *See id.* at 326:12–17.

31. *See id.* at 302:5–18.

32. *See* Arahova Committee Mem. at 23.

33. 9/20/05 Tr. at 20:14–16, 22:1–18.

34. *See* 28 U.S.C. § 158(a).

35. *See* 28 U.S.C. § 158(a)(1).

36. *United States Trustee v. Bloom (In re Palm Coast, Matanza Shores Ltd.),* 101 F.3d 253, 256 (2d Cir.1996). *See also United States Trustee v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.),* No. 02 Civ. 2854, 2003 WL 21738964, at *3–4 (S.D.N.Y. July 28, 2003) (order authorizing debtor to pay a fee to certain professionals upon further order of the Court was not final, however, order authoriz-ing immediate reimbursement for professional fees was final).

The Second Circuit has followed *Palm Coast* with some reservation. In *In re Aro-Chem Corporation,* the court noted "that *Palm Coast* may cut against the grain of prior Circuit precedent" due to its expansive concept of a final order in bankruptcy. *Bank Brussels Lambert v. Coan (In re AroChem Corp.),* 176 F.3d 610, 620 n. 6 (2d Cir.1999) (citing *In re Johns–Manville,* 824 F.2d 176, 179 (2d Cir. 1987)). However, "once *Palm Coast* was decided, it became binding precedent." *Id.* Accord *In re Kurtzman,* 194 F.3d 54, 57 n. 1 (2d Cir.1999) ("While, in the fullness of time, it may indeed be appropriate for us to revisit en banc the holding of *Palm Coast,* this obviously is not the case to do so because we conclude that this appeal is now moot.").

37. *XO Communications, Inc. v. Start Investments, Inc. (In re XO Communications, Inc.),* No. 03 Civ. 1898, 2004 WL 360437, at *2 (S.D.N.Y. Feb. 26, 2004) (quoting *In re Pegasus Agency, Inc.,* 101 F.3d 882, 885 (2d Cir. 1996) (citations omitted)).

contract or an unexpired lease.[38] An order approving a disclosure statement is not final because "the alleged inadequacies of the disclosure may change or be rendered moot" depending on how the bankruptcy court resolves the issues at the "heart" of the objecting party's concerns.[39]

 Orders determining the appointment of professionals in a bankruptcy case are final. The Second Circuit has held that bankruptcy court orders granting or denying motions to disqualify counsel are final.[40] Similarly, orders granting or denying appointment of a trustee in a bankruptcy case are final.[41] By contrast, an order denying a motion for the appointment of an official committee to represent

creditors is not final, because it "does not exclude [creditors] from participation in the proceeding; it merely denies them the advantages of official committee status." [42]

## B. Interlocutory Orders

 Appeals from non-final bankruptcy court orders may be taken either under the collateral order doctrine,[43] or pursuant to section 158(a)(3) of title 28 of the United States Code.[44]

### 1. Collateral Order Doctrine

 "An interlocutory order may be appealed pursuant to the collateral order doctrine ... where the decision would (1) conclusively determine the disputed ques-

**38.** *See In re Worldcom, Inc.,* No. 02–13533, 2005 WL 1208519, at *5 (S.D.N.Y. May 19, 2005) (collecting cases).

**39.** *See id.* (citation omitted).

**40.** *See In re Kurtzman,* 194 F.3d at 54 (order denying retention of counsel was final); *In re AroChem Corp.,* 176 F.3d at 620 (order authorizing a trustee to retain counsel to pursue lawsuits on behalf of creditors was final); *In re Palm Coast, Matanza Shores Ltd.,* 101 F.3d at 256 (orders permitting trustee to retain his own real estate firm as a consultant to the estate was final). *See also Exco Resources, Inc. v. Milbank, Tweed, Hadley & McCloy LLP (In re Enron),* No. 02 Civ. 5683, 2003 WL 223455, at *3 (S.D.N.Y. Feb. 3, 2003) (order denying motion to disqualify counsel for creditor's committee was final).

**41.** *See In re American Preferred Prescription, Inc.,* 255 F.3d 87, 92 (2d Cir.2001) ("preconfirmation order appointing a trustee has been deemed 'final' for purposes of an appeal") (dicta) (citing *Cajun Elec. Power Cooperative v. Central Louisiana Electric Co. (In re Cajun Elec. Power Cooperative),* 69 F.3d 746, 748 (5th Cir.1995); *In re Plaza de Diego Shopping Ctr., Inc.,* 911 F.2d 820, 826 (1st Cir. 1990)). *See also In re Marvel Entertainment Group, Inc.,* 140 F.3d 463, 470 (3rd Cir.1998) (order appointing a trustee is final); *In re Revco D.S., Inc.,* 898 F.2d 498, 499–500 (6th Cir.1990) (denial of U.S. Trustee's right to

compel the appointment of an examiner is final); *In re Oklahoma Refining Co.,* 838 F.2d 1133 (10th Cir.1988) (reviewing order appointing a trustee); *Committee of Dalkon Shield Claimants v. A.H. Robins Co.,* 828 F.2d 239, 241 (4th Cir.1987) (order denying appointment of a trustee was final); *In re Homer Arth Well No. 1,* 529 F.2d 1272, 1274 (6th Cir.1976) (order vacating appointment of a trustee and substituting a different trustee is final). *But see In re Cash Currency Exch., Inc.,* 762 F.2d 542, 548 (7th Cir.1985) (concluding, without analysis, that order appointing a trustee was interlocutory).

**42.** *In re Johns–Manville Corp.,* 824 F.2d at 180. *Cf. In re Amatex Corp.,* 755 F.2d 1034, 1041 (3d Cir.1985) (order denying request to appoint a legal representative for future asbestos plaintiffs was final because it excluded future claimants from participation in proceedings).

**43.** *See, e.g., In re Ad Hoc Comm. of Tort Victims,* No. 04 Civ. 8934, 2005 WL 267564, at *3 (S.D.N.Y. Feb. 3, 2005).

**44.** *See also* 28 U.S.C. § 158(c)(2) ("[a]n appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules.").

tion, (2) resolve an important issue completely separate from the merits of the action[ ], and (3) be effectively unreviewable on appeal from a final judgment."[45] A decision is not reviewable as a collateral order unless it satisfies all three requirements.[46] This is a "narrow exception" to the general "final judgment" rule, limited to review of orders "affecting rights that will be irretrievably lost in the absence of an immediate appeal."[47] The "possibility that a ruling may be erroneous and may impose additional litigation expense is not sufficient to set aside the finality requirement."[48]

## 2. Section 158(a)(3)

 In deciding whether to grant leave to appeal under section 158(a)(3), reviewing courts have applied the standards set forth in 28 U.S.C. § 1292(b), which governs the appealability of interlocutory district court orders.[49] Under section 1292(b), for an interlocutory appeal to be granted, the order being appealed must "(1) involve a controlling question of law (2) over which there is substantial ground for difference of opinion," and the movant must also show that "(3) an immediate appeal would materially advance the ultimate termination of the litigation."[50] In addition, leave to appeal is warranted only when the movant demonstrates the existence of "exceptional circumstances."[51] The decision whether to grant an interlocutory appeal from a bankruptcy court order is within the district court's discretion.[52]

 "In regard to the first prong, the 'question of law' must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record."[53] The question must also be "controlling" in the sense that reversal of the bankruptcy court would terminate the action, or at a minimum that determination of the issue on appeal would materially affect the litigation's outcome.[54]

 Regarding the second prong, the "substantial ground for a difference of opinion" must arise out of a genuine doubt as to the correct applicable legal standard relied on in the order.[55] Substantial ground would exist if the issue is "difficult

**45.** *In re Worldcom, Inc.,* 2005 WL 1208519, at *1 (citing *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546–47, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)).

**46.** *See, e.g., United States v. Weiss,* 7 F.3d 1088, 1089 (2d Cir.1993).

**47.** *In re Johns–Manville Corp.,* 824 F.2d at 180–81 (quoting *Richardson–Merrell Inc. v. Koller,* 472 U.S. 424, 430–31, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985)).

**48.** *Richardson–Merrell Inc.,* 472 U.S. at 436, 105 S.Ct. 2757. *See also Germain v. Connecticut Nat'l Bank,* 930 F.2d 1038, 1040 (2d Cir.1991) (it is not enough "that postponement of vindication may ultimately prove less efficient than an immediate review, or that ultimate vindication may require a second trial before a different trier of fact") (citations omitted).

**49.** *See In re Alexander,* 248 B.R. 478, 483 (S.D.N.Y.2000).

**50.** 28 U.S.C. § 1292(b).

**51.** *Pereira v. Cogan,* 265 B.R. 32, 34 (S.D.N.Y. 2001). *Accord In re Alexander,* 248 B.R. at 483; *Gache v. Balaber–Strauss,* 198 B.R. 662, 664 (S.D.N.Y.1996).

**52.** *See, e.g., In re Kassover,* 343 F.3d 91, 94 (2d Cir.2003).

**53.** *In re Worldcom,* 2003 WL 21498904, at *10 (quotation and citation omitted).

**54.** *See North Fork Bank v. Abelson,* 207 B.R. 382, 389–90 (E.D.N.Y.1997).

**55.** *See In re Worldcom,* 2003 WL 21498904, at *10 (citation omitted).

and of first impression." [56] However, it is not sufficient that the relevant case law is "less than clear" or allegedly "not in accord." [57]

## C. Stay Pending Appeal

A party seeking a stay pending appeal carries a heavy burden. Rule 8005 of the Federal Rules of Bankruptcy Procedure sets forth the procedure by which a party may seek a stay pending an appeal to the district court of a bankruptcy court's order. "The Rule does not articulate, however, the standard that governs such motions." [58] The Second Circuit has not spoken directly on this issue, and courts in this district have formulated various tests, drawing on the standard for preliminary injunction motions [59] or, alternatively, on the standard governing stays of district court orders pending appeals to the circuit courts. [60] The latter is the most logical because the district court stands in the same relation to the bankruptcy court as does the circuit court to the district court when a party seeks a stay of a district court order under Appellate Rule 8. By contrast, the preliminary injunction standard does not assume a prior judicial ruling. [61]

■ "Accordingly, in deciding whether to grant a stay of bankruptcy proceedings pending appeal, a district court considers the following factors: (1) whether there is a substantial possibility of success on appeal, (2) the risk of irreparable injury to the movant absent a stay, (3) the lack of substantial harm to another party if a stay is granted, and (4) the public interests that may be affected." [62] All four criteria must be satisfied to some extent before a stay is granted. [63]

## III. DISCUSSION

### A. The Bankruptcy Court Orders Were Not Final

#### 1. The Order in Aid

■ The Arahova Committee asks that this Court review the Bankruptcy Court's expedited procedures for determining inter-debtor issues, including the abbreviation of avoidance action formalities, the refusal to set a bar date for inter-debtor claims, and the requirement that parties with interests in inter-debtor disputes file an "Issues List" with the court. [64] But the

**56.** *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir.1990).

**57.** *North Fork Bank*, 207 B.R. at 390 (holding that disagreement between parties about meaning of the term "business trust" did not rise to a level of a "substantial ground for a difference of opinion," because definition of term was not a matter of first impression in the Circuit).

**58.** *In re Savage & Assoc.*, No. 05 Civ. 2072, 2005 WL 488643, at *1 (S.D.N.Y. Feb. 28, 2005).

**59.** *See, e.g., In re Turner Spares, Ltd.*, 210 B.R. 235, 236 (S.D.N.Y.1997).

**60.** *See, e.g., In re General Credit Corp.*, 283 B.R. 658, 659–60 (S.D.N.Y.2002).

**61.** *See id.* at 659.

**62.** *In re Savage*, 2005 WL 488643, at *1 (citing *Hirschfeld v. Board of Elections*, 984 F.2d 35, 39 (2d Cir.1993); *In re Suprema Specialties, Inc.*, 330 B.R. 93, 94–95 (S.D.N.Y.2005)).

**63.** *See Turner v. Citizens Nat'l Bank of Hammond*, 207 B.R. 373, 375 (2d Cir. BAP 1997). *See also In re Charles and Lillian Brown's Hotel, Inc.*, 93 B.R. 49, 53–54 (Bankr. S.D.N.Y.1988) (same).

**64.** *See* Statement of Issues on Appeal of the Order Granting the Motion in Aid ("Order in Aid Issues Statement") ¶ 2, Ex. 13 to the Affirmation of Douglas P. Baumstein in Support of the Ad Hoc Committee of Arahova Noteholders' Motion for Leave to File an Expedited Appeal ("Baumstein Aff.").

Bankruptcy Court's determinations on these issues are not final, because they direct the parties to engage in or participate in further proceedings and do not resolve any substantive issue.[65]

■■■ The Bankruptcy Court's failure to find a waiver of the attorney-client privilege based on Willkie Farr & Gallagher's dual representations of debtors on both sides of inter-debtor claims is also not a final order.[66] The Bankruptcy Court held that it would "leave requests for finding such a waiver for another day, if and when a suitable record for ruling on such an issue has been developed, and after the Debtors, the Creditors' Committee and other interested parties have a chance to be heard." [67]

■■■ The Arahova Committee also requests review of the Bankruptcy Court's Order in Aid on the grounds that certain professionals involved are conflicted and new professionals should be appointed.[68] However, the Arahova Committee did not clarify how many independent fiduciaries and/or counsel it was requesting, or which debtors required the appointment of more professionals.[69] Additionally, the Arahova Committee did not clarify the meaning of

the term "fiduciary", which is not defined by the Bankruptcy Code. Because the Arahova Committee never made a "discrete claim" for relief in this regard, the Bankruptcy Court's order overruling all objections to the Motion in Aid was not final as to new professionals.[70]

Had the Bankruptcy Court squarely addressed a request for appointment of new professionals and disqualification of conflicted professionals, the order would have been final. In *In re AroChem*, the Second Circuit held that an order under section 327 of the Bankruptcy Code authorizing the trustee to retain a law firm, and denying a motion to disqualify that firm due to conflicts of interest, was final.[71] But the Arahova Committee cannot make a motion under section 327 because that section only allows a trustee or a debtor-in-possession to appoint professionals. Therefore, the Arahova Committee has argued that it should be appointed to "stand in the shoes" of the debtor-in-possession and make formal application to retain non-conflicted professionals under section 327.[72] Alternatively, the Arahova Committee has argued that it can move to compel certain debtors to appoint non-conflicted professionals under section 327.[73] In terms of

---

**65.** *See In re Bethlehem Steel*, 2003 WL 21738964, at *5 (portion of order not final where further proceedings in the Bankruptcy Court were required to fully determine the issue). *See also In re Hooker Investments, Inc.*, 937 F.2d 833, 836 (2d Cir.1991) (bar date interlocutory); *In re Brentwood Golf Club, L.L.C.*, 329 B.R. 239, 243–44 (E.D.Mich. 2005) (scheduling order interlocutory).

**66.** *See* Order in Aid Issues Statement ¶ 3.

**67.** 7/26/05 Tr. at 319:20–21.

**68.** *See* Order in Aid Issues Statement ¶ 1.

**69.** *See* Objection ¶ 12 (requesting that "the Court require the appointment of at least *one* fiduciary for the Arahova estates.") (emphasis in original); Scheduling Order, Ex. A to Ob-

jection ¶ IIIC (proposing that the Bankruptcy Court order that "[e]ach Debtor shall appoint a fiduciary and designate counsel to represent each Debtor in respect of the intercompany issues"); 7/26/05 Tr. at 66:8–69.3 (counsel to the Arahova Committee stated he was "not asking today for more fiduciaries"); 9/20/05 Tr. at 11:15–16 (requesting an independent fiduciary for each of the nine groups of consolidated debtors).

**70.** *In re Pegasus Agency, Inc.*, 101 F.3d at 885.

**71.** 176 F.3d at 619–20.

**72.** 9/20/05 Tr. at 14:22–23.

**73.** *See* Transcript of Oral Argument before Hon. Shira A. Scheindlin ("9/21/05 Tr.") at 59:20–60:10.

finality, there is no meaningful distinction between an order denying these requests and the order at issue in *In re AroChem.*[74]

Therefore, should the Arahova Committee raise the issue of retention or disqualification of specific professionals and counsel for certain named debtors, and should the Bankruptcy Court deny that motion, the Arahova Committee would be entitled to an appeal as a matter of right.[75] This Court retains jurisdiction to rule on the issue in the event that the Bankruptcy Court enters a final order.

## 2. The Standing Motion

■ The Arahova Committee appeals the Bankruptcy Court's denial of the Standing Motion because the Bankruptcy Court "err[ed] in failing to grant the Arahova [ ] Committee standing to pursue legal actions on behalf of Arahova when Arahova has no disinterested fiduciary or counsel to initiate or prosecute such actions on behalf of Arahova."[76] However, the Order in Aid allows the Arahova Committee to participate in the resolution of the inter-debtor issues through alternative procedures. The denial of the Standing

Motion is not final because it merely denies the Arahova Committee "the advantages of official [ ] status," as opposed to excluding it from participation.[77]

## 3. The Motion to Compel

■ The Bankruptcy Court's order denying the Motion to Compel is not a final order because the Arahova Committee may have the opportunity to procure the documents it requires through the procedures established by the Order in Aid.[78]

## 4. The Motion to Strike

■ The Arahova Committee concedes that the schedules of liabilities at issue in the Motion to Strike merely "present[ ] the possibility" that the intercompany transactions "will be given the benefit of presumptive validity."[79] The Bankruptcy Court noted that under the Order in Aid, the Arahova Committee "will still be able to litigate, among other things, the validity, characterization and amount of the intercompany transactions."[80] Therefore, the Bankruptcy Court's denial of the Motion to Strike was not a final order.

74. *See In re Kurtzman,* 194 F.3d at 54 (no meaningful distinction, in terms of finality, between an order authorizing retention of counsel and order denying retention of counsel); *In re Enron,* 2003 WL 223455, at *3 (no meaningful distinction, in terms of finality, between initial order granting retention of counsel and midstream denial of motion to disqualify counsel).

75. Additionally, should the Arahova Committee move for appointment of a trustee or examiner for any certain named debtors, it would be entitled to appeal a grant or denial of the motion by the Bankruptcy Court. However, at oral argument, the Arahova Committee argued that it did not want to appoint a trustee because it would constitute a default under certain of the debtor's financing agreements and the Time Warner/Comcast sale agreements. *See* 9/21/05 Tr. at 64:1–3.

76. *See* Statement of Issues on Appeal of the Order Denying the Standing Motion, ¶ 1, Ex. 15 to Baumstein Aff.

77. *In re Johns–Manville,* 824 F.2d at 180. *But see Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.),* 177 F.3d 774, 780 (9th Cir.1999) (order assigning to creditor the estates' right to sue certain individuals and to avoid certain transactions was final).

78. *See In re Worldcom, Inc.,* 2005 WL 1208519, at *5 (order not final where alleged inadequacies of disclosure statement could be rendered moot by further proceedings).

79. Arahova Committee Mem. at 18.

80. 7/26/05 Tr. at 302.

## B. Interlocutory Orders of the Bankruptcy Court

### 1. Collateral Order Doctrine

 The Arahova Committee contends that the Orders should be reviewed under the collateral order doctrine because they conclusively determine procedural issues which improperly collapse the legal boundaries among affiliated debtors.[81] As previously discussed, the Bankruptcy Court's Orders only establish a process to resolve inter-debtor issues as an adjunct to confirmation, they do not conclusively resolve any issue.

Moreover, the Arahova Committee and any other aggrieved creditors will have the opportunity to appeal any adverse substantive determination after the Bankruptcy Court enters an order confirming the plan. The appellate court can reverse the determinations of the Bankruptcy Court, including the order granting the Motion in Aid, and require that those issues be relitigated pursuant to different procedures.

The Arahova Committee argues that this Court should grant leave to appeal because reversal now is preferable to reversal after the plan confirmation process, when an appeal could jeopardize the closing of the Time Warner/Comcast sale.[82] This argument is speculative. It presupposes that the Arahova Committee would prevail on its appeal, a question yet to be decided. Also, it is uncertain whether the procedure established by the Order in Aid will result in any adverse substantive determinations against the Arahova Committee. Even if this Court were to order the Bankruptcy Court to employ the procedures suggested by the Arahova Committee, those procedures might result in substantive determinations adverse to Arahova, and require appeal after confirmation. And as the Debtors correctly note, "*[a]ny* appeal from a confirmation order in this case—whether taken by the [Arahova Committee or any other party] may have an adverse impact on the Debtors' ability to close the Time Warner/Comcast sale in a timely manner. A grant of leave to appeal now will not obviate that concern." [83]

### 2. Section 158(a)(3)

 The many issues for appeal raised by the Arahova Committee certainly fail at least one prong of the section 1292(b) test because granting interlocutory appeal will not materially advance the litigation. By its own admission, the Committee's procedures are designed to proceed in roughly the same time frame as those in the Order in Aid.[84] In *In re Enron Corp.*, the court

---

81. *See* Arahova Committee Mem. at 23. It is notable that the cases cited by the Arahova Committee on this point are appeals of final orders of substantive consolidation of debtors. *See In re Owens Corning*, 419 F.3d 195, 203–05 (3rd Cir.2005); *Union Sav. Bank v. Augie/Restivo Baking Co. (In re Augie/Restivo Baking Co.)*, 860 F.2d 515, 520–21 (2d Cir. 1988). Although the plan proposes substantive consolidation of certain debtors, the plan has not yet been confirmed by the Bankruptcy Court. *Augie/Restivo* held that a creditor cannot be made to "sacrifice the priority" of its claim based on the bankruptcy court's decision that doing so would benefit the estate as a whole. *In re Augie/Restivo Baking Co.*, 860 F.2d at 520. The order approving the Motion

in Aid does not determine the priority of any claim.

82. *See* Arahova Committee Mem. at 19.

83. Debtors' Mem. at 11 n. 5 (emphasis added). At oral argument, counsel to the Arahova Committee argued that adverse determinations against Arahova in the inter-debtor disputes could render the creditors of Arahova unwilling to vote for the plan, leading to difficulties consummating the Time Warner/Comcast sale. *See* 9/21/05 Tr. at 73:7–74:2.

84. *See* Arahova Committee Mem. at 4 ("[T]he Arahova Noteholders Committee submitted its

denied leave to appeal an order staying arbitration because affirmance would not have expedited the litigation and reversal was "likely to complicate it" by creating duplicative proceedings in bankruptcy court and in arbitration.[85] Here, affirmance of the Orders would not advance the proceedings. Reversal could vastly complicate the proceedings by requiring the Bankruptcy Court to appoint hundreds of new professionals to resolve each inter-debtor dispute through an adversary proceeding.[86]

Similarly, the Arahova Committee is incorrect when it argues that granting an appeal now will reduce the likelihood that appellate practice after a final confirmation order is entered will jeopardize the Time Warner/Comcast sale.[87] It is uncertain that an appellate court would ever need to address these issues, in which case an interlocutory appeal now would be a waste of judicial resources.[88]

Additionally, I find that no exceptional circumstances are present that would justify an interlocutory appeal. The Arahova Committee is correct that this is an important case with a great deal of money at stake, but this alone does not justify a departure from the final judgment rule. If

anything, this argument militates strongly in favor of deferring to the Bankruptcy Court, which has handled the case for three years and is infinitely more familiar with the record.

 The Arahova Committee also argues that if leave to appeal is not granted now, it will be precluded from seeking review of these issues after confirmation by the doctrine of equitable mootness.[89] This doctrine applies when "even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable."[90] Such a dismissal is appropriate when the "appellant has made no effort to obtain a stay and has permitted such a comprehensive change of circumstances to occur as to render it inequitable for the appellate court to reach the merits of the appeal."[91] "Completed acts in accordance with an unstayed order of the bankruptcy court must not thereafter be routinely vulnerable to nullification if a plan of reorganization is to succeed."[92]

 Equitable mootness does not become a factor unless a party fails to obtain a stay of a bankruptcy court order that

own set of procedures for consideration that would have provided a more traditional mechanism for resolving inter-Debtor issues within the same timeframe.").

85. *See In re Enron Corp.*, 316 B.R. 767, 772 (S.D.N.Y.2004).

86. At oral argument, the Arahova Committee argued that, contrary to its moving papers, it sought only to appoint one fiduciary and independent counsel for each of the nine groups of debtors, or "silos," consolidated by the plan. *See* 9/20/05 Tr. at 11:15–16. The debtors argued that such a proposal would also be unworkable due to the fact that the nine silo structure was likely to undergo material revisions in future plan amendments. *See* 9/21/05 Tr. at 47:9–13.

87. *See* Arahova Committee Mem. at 15; Reply Memorandum of Law of Ad Hoc Committee of Arahova Noteholders in Further Support of Motion for Leave to File an Expedited Appeal at 8.

88. *See In re Bethlehem Steel Corp.*, 2003 WL 21738964, at *4 ("Deciding an issue now, which may never need to be decided, does not help to advance the litigation.").

89. *See* Arahova Committee Mem. at 29–30.

90. *In re Chateaugay Corp.*, 988 F.2d 322, 325 (2d Cir.1993).

91. *Id.*

92. *Id.*

results in a change in circumstances.[93] If an appellant does seek a stay pending appeal, a court "will provide relief if it is at all feasible, that is, unless relief would knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court."[94]

In this case, the Bankruptcy Court has not yet entered a confirmation order. There are still "rules in place that [the Arahova Committee] may use to prevent equitable mootness" and to "enable appeal and review" of any and all issues in this bankruptcy.[95] The possibility of equitable mootness will only become an issue if the Arahova Committee fails to protect its rights after confirmation.[96] Therefore, equitable mootness concerns do not militate in favor of granting interlocutory review.

The other two prongs of the test ("controlling question of law" as to which "there is substantial ground for difference of opinion") present a closer issue. The Arahova Committee does not point out which issues for appeal, out of the plethora it puts forward, are even amenable to interlocutory review. Some sifting is required to determine whether there are any "abstract issues of law" that this Court "could decide quickly and cleanly without having to study the record."[97]

As an initial matter, all nine separate issues presented on appeal of the denial of the Arahova Committee's Motion to Strike,[98] as well as the issue presented on appeal from the denial of the Motion to Compel,[99] appear to be within the Bankruptcy Court's broad discretion under section 105 of the Bankruptcy Code to "prescrib[e] such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically."[100] These issues do not present pure questions of law or "arise out of a genuine doubt as to the correct applicable legal standard that was relied on in the order."[101]

In fact, the only colorable "pure issues of law" that emerge from the Arahova Committee's appeal can be fairly stated as follows:

---

93. *See, e.g., In re Metromedia Fiber Network, Inc.,* 416 F.3d 136, 144–45 (2d Cir.2005) (equitable mootness applied largely because "appellants sought no stay of the confirmation order, and sought no expedited review in this appeal, which was filed over a year ago"). *See also In re Enron Corp.,* No. 04 Civ. 8883, 2005 WL 1500875, at *7 (S.D.N.Y. June 23, 2005) (same); *In re Ionosphere Clubs, Inc.,* 184 B.R. 648, 652 (S.D.N.Y.1995) (appeal moot because, inter alia, appellant failed to seek or obtain a stay of entry of confirmation order).

94. *In re Chateaugay Corp.,* 10 F.3d 944, 953 (2d Cir.1993) (quotation and citation omitted)

95. *In re Worldcom,* 2003 WL 21498904, at *11 (finding that "exceptional circumstances" justifying interlocutory appeal do not exist when appellant still has the opportunity to stave off equitable mootness).

96. *In re Chateaugay Corp.,* 988 F.2d at 326.

97. *In re Worldcom,* 2003 WL 21498904, at *10 (quotation and citation omitted).

98. *See* Ad Hoc Committee of Arahova Noteholders' Amended Statement of Issues Presented on Appeal [of the Order Denying the Motion to Strike].

99. *See* Statement of Issues on Appeal of the Order Denying the Motion to Compel, Ex. 17 to Baumstein Aff.

100. 11 U.S.C. § 105(d)(2). In particular, several of Arahova's issues involve complaints about discovery. Discovery orders generally do not present controlling questions of law. *See Gache,* 198 B.R. at 665 (quotation and citation omitted).

101. *In re Worldcom,* 2003 WL 21498904, at *10 (citation omitted).

1) Should the bankruptcy court have appointed an independent fiduciary for each debtor? [102]

2) Should the bankruptcy court have appointed independent counsel for each conflicted debtor?

The issues of which professionals are conflicted and which should be appointed are "fact-based" determinations.[103] In any case, even assuming that the Court could distill the Arahova Committee's request for relief to a narrow legal question regarding proper representation for individual debtor entities, interlocutory appeal would still be inappropriate for the reasons discussed earlier.

## C. Motion to Stay

■ The Arahova Committee's Motion to Stay Pending Appeal is denied. The Arahova Committee has not demonstrated a substantial possibility of success on appeal. The Bankruptcy Court has broad authority under section 105 of the Bankruptcy Code.[104] The Arahova Committee put forward sixteen separate "Issues for Appeal" as part of its application to this Court; most, if not all, directly implicate the Bankruptcy Court's discretionary authority.

Even assuming that Arahova could demonstrate a substantial possibility of success on appeal, it cannot satisfy any of the other necessary factors. *First*, the Arahova Committee has fallen far short of demonstrating irreparable injury to it absent a stay. The Arahova Committee offers that "[i]f on appeal, however, the [Order in Aid] is vacated, the entire 'Resolution Process' and the decisions resulting therefrom will be rendered invalid." [105] However, as the ACC Senior Noteholders point out, "[t]hat is true of any ruling that is overturned on appeal." [106] The parties are required to undertake much of the same preparation to participate in the procedures under the Order in Aid as under the Arahova Committee's proposed procedures. Therefore, a stay of the proceedings now would not necessarily save any effort. The Arahova Committee is also concerned that the Bankruptcy Court's rulings will be effectively unreviewable at the end of the case. But, the Arahova Committee can seek a stay of the confirmation order pending appeal at the end of the case.[107] As the debtors explained at oral argument, after the closing of the Time Warner/Comcast sale, the parties can still appeal Bankruptcy Court decisions determining distributions under the plan.[108]

---

102. As previously discussed, the Arahova Committee is no longer requesting this relief.

103. *See, e.g., In re Masterwear Corp.*, No. 98 Civ. 0688, 1998 WL 879694, at *4 (S.D.N.Y. Dec. 16, 1998) ("The decision not to disqualify [a law firm] does not involve a 'controlling question of law,' as evidenced by the fact-based nature of [appellant's] objections.").

104. *See U.S. v. Energy Resources Co.*, 495 U.S. 545, 549, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990).

105. Motion of the Ad Hoc Committee of Arahova Noteholders Pursuant to Fed. R. Bankr.P. 8805 for Entry of an Order Granting Stay Pending Appeal of the Intercompany Procedures Order ("Arahova Stay Mem.") at 7.

106. Objection of Ad Hoc Committee of ACC Senior Noteholders to Ad Hoc Committee of Arahova Noteholders' Motion for Stay Pending Appeal at 3.

107. *Cf. In re Chateaugay Corp.*, 988 F.2d at 325 (dismissal of bankruptcy appeal on equitable mootness grounds appropriate when "appellant has made no effort to obtain a stay and has permitted such a comprehensive change of circumstances to occur as to render it inequitable for the appellate court to reach the merits of the appeal.").

108. *See* 9/21/05 Tr. at 70:19–72–17. The Arahova Committee countered that if the Bankruptcy Court's procedures result in low distributions for noteholders of Arahova, those noteholders might not vote for the plan, jeop-

**666**

*Second,* many parties will suffer substantial harm if a stay is granted. There are several complicated inter-creditor disputes that must be resolved by next Spring if the Time Warner/Comcast sale is to close. The requested stay would not completely halt the proceedings below, but it would substantially impair progress towards confirmation.[109] The parties require as much time as possible to resolve disputes, and halting that process now can only harm all parties.[110]

*Third,* for similar reasons, a stay would not be in the public interest, as it would jeopardize completion of a pending transaction that provides the best, and perhaps only; prospect of fulfilling the function of the Bankruptcy Code, which is to "achieve the maximum distribution [to creditors] in the minimum time."[111]

## V. CONCLUSION

For the foregoing reasons, the Arahova Committee's motion is denied. The Clerk of the Court is directed to close the motion.

SO ORDERED.

ardizing confirmation and the Time Warner/Comcast sale. *See id.* at 73:7–74:2. However, as previously discussed, this argument is highly speculative.

**109.** Even by the Arahova Committee's own characterization, the requested stay covers most aspects of the procedures adopted by the Bankruptcy Court, such as briefing, hearing dates, sequencing of issues, and discovery. *See* Arahova Stay Mem. at 2 (*see also id.* at 8 (the creation of a "data room" for relevant documents would not be stayed)). The debtors characterize the scope of the requested stay as "quite broad," which would bring the process to a "total standstill" for the duration

of the contemplated appeal. *See* Debtors' Memorandum of Law in Opposition to the Motion of the Ad Hoc Committee of Arahova Noteholders Pursuant to Fed. R. Bankr.P. 8005 for Entry of an Order Granting Stay Pending Appeal of the Intercompany Procedures Order at 10.

**110.** *See In re Savage,* 2005 WL 488643, at *2 (other parties in a bankruptcy proceeding will be harmed if a stay is granted pending appeal, "because the proceedings below would effectively grind to a halt").

**111.** *In re I. Appel Corp.,* 300 B.R. 564, 569 (S.D.N.Y.2003).