**In re George I. KOPER, Debtor.**

**No. 99–30277 (ASD).**

United States Bankruptcy Court,
D. Connecticut.

Dec. 12, 2002.

Frederick A. Dlugokecki, Naugatuck, CT, for Debtor.

Molly T. Whiton, Hartford, CT, trustee.

## MEMORANDUM OF DECISION AND ORDER DENYING MOTION FOR STAY PENDING APPEAL AND GRANTING EXTENSION OF TIME TO FILE AN AMENDED PLAN

ALBERT S. DABROWSKI, Bankruptcy Judge.

The Debtor, George I. Koper, in connection with an appeal[1] (hereafter, the "Appeal") of this Court's November 1, 2002 *Memorandum of Decision on Objections to Confirmation of Plan* (hereafter, the "Memorandum of Decision"),[2] Doc. I.D. No. 103, and related *Order on Confirmation of Chapter 13 Plan* (hereafter, the "Order"), Doc. I.D. No. 104, has filed a

---

1. The Debtor filed a *Notice of Appeal* on November 12, 2002. Doc. I.D. No. 109.

2. Familiarity with the Memorandum of Decision, and its terminology, is assumed.

*Motion to Stay Interlocutory Order Pending Appeal* (hereafter, the "Motion for Stay"), Doc. I.D. No. 112, pursuant to Fed. R. Bankr.P. 8005 seeking a stay of the Order pending "disposition of the ... [Appeal]". The Debtor simultaneously filed a *Motion for Extension of Time to Comply with Order of Confirmation of Chapter 13 Plan Pending Disposition of Appeal* (hereafter, the "Motion for Extension of Time"), Doc. I.D. No. 111, seeking "an extension of time to comply with the [Order] pending the final disposition of the Appeal."

On December 6, 2002, the Bank of America, FSB (hereafter, the "Bank"), a party and creditor in interest, filed an *Objection to Motion to Stay Interlocutory Order Pending Appeal and Motion for Extension of Time to Comply with Order of Confirmation of Chapter 13 Plan Pending Disposition of Appeal* (hereafter, the "Objection"), Doc. I.D. No. 119. The Motion for Stay, Motion for Extension of Time, and the Objection came before the Court for a hearing this same date (hereafter, the "Hearing"), at which time the Court received the testimony of the Debtor, and heard arguments of counsel for the Debtor, the Bank and the Chapter 13 Trustee.

## I. DISCUSSION

### A. The Motion for Stay

█ The Motion for Stay is governed by a multi-factored analysis distilled by the United States Supreme Court in *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987).[3] Under that

---

3. The Bank, without reference to *Hilton v. Braunskill* and with no objection from the Debtor, urged the Court to apply the four part test (hereafter "the *Hirschfeld* standard") articulated by a number of panels in the United States Court of Appeals for the Second Cir-

analysis, the following factors must be considered:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.*

### 1. Likelihood of Success on Appeal.

■ As to the likelihood of appellate success on the merits, the Court recognizes the inherent conflict of a rendering court determining the probability that its own determination and order will or will not be reversed on appeal. That recognition, in this case, led the Court to solicit at the Hearing the view of counsel for the Chapter 13 Trustee who opined that the Debtor had met his burden on this element. Notwithstanding that counsel for the Chapter 13 Trustee may be somewhat conflicted in this matter,[4] the Court ac-

cords weight to the Chapter 13 counsel's evaluation of this component.

Two other factors are of greater significance in the appellate success calculus. First, the parties and the Chapter 13 Trustee appear to be in agreement that the issue presented in this case is worthy of appellate review. And, second, the Court must be mindful that the Memorandum of Decision enunciates a position at odds with other authority including that of its own making.[5]

Accordingly, while the Court believes it not likely that its Memorandum of Decision and Order will be reversed on appeal, the Debtor has established a substantial *possibility* of success on appeal and has made the requisite "strong showing" under *Hilton v. Braunskill.*

### 2. Irreparable Injury (to the Movant) Absent a Stay

■ With respect to the "irreparable injury" factor—identified at the Hearing by counsel for the Debtor as the most significant of the four *Hilton* factors—the

cuit, and subordinate Courts therein. Objection at 2–3. *See, e.g., Cooper v. Town of East Hampton,* 83 F.3d 31, 36 (2d Cir.1996); *LaRouche v. Kezer,* 20 F.3d 68, 72 (2d Cir.1994); *Hirschfeld v. Board of Elections,* 984 F.2d 35, 37 (2d Cir.1993); *In re Country Squire Assoc. of Carle Place, L.P.,* 203 B.R. 182, 183 (2d Cir. BAP 1996) ("(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, *(3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal,* and (4) the public interests that may be affected.") (emphasis added). The Court believes itself compelled to apply the precise multi-factor analysis set forth by the United States Supreme Court, *see Rodriguez v. De-Buono,* 162 F.3d 56, 61 (2d Cir.1998) (applying *Hilton v. Braunskill* without modification), with appropriate obedience to the *Hirschfeld* standard's phrase "substantial possibility, although less than a likelihood" as an

authoritative interpretation of the Supreme Court's phrase "strong showing".

4. The Chapter 13 Trustee originally argued in favor of confirmation of the Debtor's "Hybrid Plan". In the Memorandum of Decision the Court rejected the Chapter 13 Trustee's argument that the Second Circuit Court of Appeals' opinion in *In re Bellamy,* 962 F.2d 176 (2d Cir.1992) supported the use of a Hybrid Plan.

5. In the Memorandum of Decision, the Court departed from its own prior confirmation of Hybrid Plans, as well as a decision of the United States District Court for the District of Connecticut on appeal of one such ruling. *In re Kinney,* Case No. 97–34118, Doc. I.D. No. 79 (Bankr.D.Conn. Aug. 7, 1998) (unpublished margin endorsement overruling objection to plan confirmation), *aff'd* Civil Action No. 3:98CV1753 (CFD), slip op. at 8–13 (D. Conn. April 12, 2000).

Debtor, who has the ultimate burden of establishing his entitlement to a stay pending appeal, failed even to make a credible initial showing. While counsel for the Debtor asserted that the Debtor "will sustain irreparable harm if the Order is not stayed pending appeal in that the Debtor will loose (sic) all of his properties through foreclosure proceedings if the Order is enforceable . . . ," Motion for Stay at p. 1, ¶ 1, he offered no *evidence* at the Hearing to support this claim.[6]

Further, with regard to the "irreparable harm" factor, it is instructive to review the conclusion of the Memorandum of Decision that mortgaged property can be preserved from foreclosure in a Chapter 13 case in at least *two* ways. Some debtors will be able to preserve their property by bifurcating an undersecured creditor's claim and paying the full present value of the secured component within the plan term—a so-called "strip and pay" plan. Other debtors, who do not have the wherewithal to amortize the secured component during the life of the plan, can preserve their property from foreclosure through a "cure and maintain" plan, *i.e.* by curing any default (*e.g.,* paying a pre-petition payment arrearage) during the term of the plan, while maintaining current contractual payments outside the plan.

The Debtor argues that he will be irreparably harmed absent a stay because he does not have the financial wherewithal to confirm an amended plan which complies with the Memorandum of Decision. Specifically, he contends that he cannot even come close to satisfying the secured components of the secured creditors' bifurcated claims *within the remaining term of the original five-year plan.* He presumes, with a basis, that his inability to confirm an amended plan will lead to the inevitable dismissal of his Chapter 13 case, and the eventual foreclosure of his properties. This argument, even if deemed supported by the evidence,[7] establishes only that the Debtor is unable at this time to propose a confirmable "strip and pay" plan within the term of the original "hybrid" plan.[8] Significantly though, the Debtor has not addressed his ability to *preserve* his properties—and thereby avoid irreparable harm—pending appeal through the filing of a "cure and maintain" plan.

Under a "cure and maintain" plan the Debtor will suffer no harm at all pending appeal, provided that the appeal is resolved before the dates on which his original plan would have satisfied the secured components of the bifurcated mortgagees' claims—dates which, for each such creditor, are well beyond the five-year term of the original plan. In the relevant timeframe the financial obligations under a "cure and maintain" plan would be no greater than those that the Debtor is cur-

---

6. The Debtor's Hearing testimony provides no basis for a finding that the Debtor will be irreparably injured absent a stay. The Debtor, called to testify at the Hearing by the Bank, provided no support for his position upon direct examination and was not subjected to cross-examination by his own counsel.

7. Although at the Hearing all parties seemed to believe that the Debtor was incapable of funding a "strip and pay" plan over the remaining term of his original "hybrid" plan, the Debtor did not furnish the Court with an evidentiary basis to find such futility.

8. The Debtor was equivocal as to whether he had the ability to fund a "strip and pay" plan with a fresh five-year term. Although this Court believes that it has the power (under Bankruptcy Code Section 105, *inter alia)* under appropriate circumstances to confirm an amended plan with a fresh five-year term, given the nature of the Court's analysis of the "irreparable harm" factor, it is not necessary at this time to determine whether such circumstances exist in this case.

rently meeting under his original "hybrid" plan: both plans provide for (i) the retirement of mortgage arrearages through monthly plan payments to the Chapter 13 Trustee, and (ii) the maintenance of monthly contractual mortgage payments outside the plan. The only difference between the original "hybrid" plan and a potential "cure and maintain" plan is that under the former, at some point after his consummation of that plan, the Debtor would reap the windfall of satisfaction of the subject mortgage debts through payment of only the secured components thereof. Pending appeal however, the Debtor can obtain confirmation of an amended, "cure and maintain" plan, and pay no more than he is currently paying under the "hybrid" plan which this Court has rejected.[9] Thus there is no immediate harm, much less irreparable harm. The Debtor has failed to establish he "*will*" be irreparably injured absent a stay."

### 3. Substantiality of Injury to Other Parties if a Stay is Granted.

The issuance of the stay would not afflict *substantial* injury on the other parties interested in this proceeding. With or without a stay the Debtor's payments to creditors may remain the same for the duration of the original, "hybrid" plan. The issuance of a stay would not alter the Debtor's obligation to continue to make payments to creditors pursuant to the original plan, and

he has represented that he "will continue to make [such] payments." Motion for Stay at page 2, ¶ 3. And, as previously noted, the Debtor's financial obligations under a "cure and maintain" plan would be no greater than those that the Debtor is currently meeting under his original, "Hybrid" Plan. While there are other possible variations of amended plans triggered by the absence of a stay that could visit more immediate financial benefits on creditors, that possibility does not give rise to a finding of substantial injury from a stay. In addition, it is also worth noting that it appears undisputed in this matter that the properties are appreciating in value due to (i) the maintenance efforts of the Debtor, and (ii) conditions in the local economy.

### 4. Public Interest.

The various properties at issue in this matter appear to be in "less than desirable neighborhoods" where, but for efforts of individuals like the Debtor, properties deteriorate, and are often abandoned, seeding blighted neighborhoods and crime. While this factor is given limited weight as noted hereafter, the public interest lies with the Debtor.[10]

### 5. Synthesis

Although three of the four *Hilton* factors slightly favor the Debtor, the most salient factor is "irreparable harm", as ac-

---

9. There may be other possibilities available to the Debtor with which to fashion an amended and confirmable plan in accordance with the Memorandum of Decision without irreparable injury. *See, e.g.* Objection at page 4.

10. In the Memorandum of Decision the Court noted:

> [b]ifurcation provides a debtor with a windfall over the bargain he made at the time of the origination of the subject secured debt by essentially permitting the principal balance of the debt to be reduced. The presence of such a windfall, unconstrained by

the time limitation of Section 1322(d), would further encourage individuals not in true economic distress to utilize Chapter 13 simply to avail themselves of that windfall. As this Court has previously held, Chapter 13 was not designed to benefit such individuals.

Memorandum of Decision, fn 14. While this observation is arguably a matter of interest to the public, in the appellate stay calculus, it is more appropriately considered, if at all, as a factor in the likelihood of appellate success.

knowledged by counsel for the Debtor at the Hearing. Indeed, as argued by the Bank, "irreparable harm" is a "threshold" factor; it can—and does in this case—render the other factors inconsequential. Because the Debtor will not be harmed absent a stay, (i) any adverse impact on the public from his loss of the properties will not materialize, (ii) the likelihood of success on the merits of the appeal takes on less importance, and (iii) the potential harm to the Bank is unaffected. Accordingly, an assessment of the requisite appellate stay factors—giving determinative weight to the Debtor's failure to establish he "*will* be irreparably injured absent a stay"—compels the conclusion that a stay of the Order under Fed. R. Bankr.P. 8005 is not warranted.

## B. The Motion for Extension of Time

Through the Motion for Extension of Time the Debtor seeks an extension of time "*to comply*" with the Order pending the final disposition of the Appeal. However, the Order does not compel the Debtor to undertake any action. Rather, the Order provided, *inter alia,* an *opportunity* for the Debtor to file, on or before, November 15, 2002 an amended plan consistent with the Memorandum of Decision, and established November 21, 2002, as a hearing date to consider, *inter alia,* confirmation of any timely-filed amended plan proposed by the Debtor. The Court treats the Motion for Extension of Time as a motion to extend these two dates.

In light of the Court's denial of the Motion for Stay, an indefinite extension of these dates pending the final disposition of the Appeal is not appropriate. However, under the present circumstances of this case, fairness and equity require a specific extension of these dates to Friday, January 17, and Thursday, January 23, 2003, respectively.

## ORDER

In light of the foregoing,

**IT IS HEREBY ORDERED** that the Motion for Stay is **DENIED,** and

**IT IS FURTHER ORDERED** that the Motion for Extension of Time is **GRANTED in part** and **DENIED in part**—the Debtor shall have until *Friday, January 17, 2003* to serve [11] and file a further amended plan consistent with the Memorandum of Decision; and a hearing shall be held on *Thursday, January 23, 2003 at 10:00 AM* at the United States Bankruptcy Court for the District of Connecticut, Connecticut Financial Center (18th Floor), 157 Church Street, New Haven, Connecticut to consider (i) confirmation of any timely filed amended plan proposed by the Debtor, or (ii) the proper disposition of funds held by the Chapter 13 Trustee and/or others; and (iii) such other and further relief as is just and proper.

**IT IS SO ORDERED.**

---

11. Service on counsel for Bank of America, FSB, The Chase Manhattan Bank, and the Chapter 13 Trustee shall be by facsimile, or Email, or other means so that actual in-hand service on those parties is effected by 4:00 PM on Friday, January 17, 2003.