In re VINCENT ANDREWS MANAGE-
MENT CORP., Robert Andrews, and
Vincent Andrews Debtors.

Vincent Andrews, Appellant,

v.

Christopher McCarron, Appellee.

Robert Andrews, Appellant,

v.

Christopher McCarron, Appellee.

Vincent Andrews, Appellant,

v.

Laffit Pincay, Jr., Appellee.

Robert Andrews, Appellant,

v.

Laffit Pincay, Jr., Appellee.

Civ. Nos. 3:08MC132(AWT),
3:08CV778(AWT) to
3:08CV781(AWT).

United States District Court,
D. Connecticut.

Oct. 5, 2009.

**2**

Robert Silver, Boies, Schiller & Flexner LLP, Armonk, NY, for Vincent Andrews Mgmt. Corp.

Gregory W. Nye, Bracewell & Giuliani, LLP, Houston, TX, Robert Silver, Boies, Schiller & Flexner LLP, Armonk, NY, for Vincent Andrews Mgmt. Corp., Robert Andrews, Vincent Andrews.

Irve J. Goldman, Pullman & Comley, Bridgeport, CT, for Christopher McCarron, Laffit Pincay, Jr.

### RULING ON APPELLANTS' MOTION FOR STAY PENDING APPEAL

ALVIN W. THOMPSON, District Judge.

Appellants Vincent Andrews and Robert Andrews (collectively, the "Debtors" or the "Appellants") have moved for a stay pending appeal of an order on the motion for summary judgment filed by the plaintiffs-appellees entered by the United States Bankruptcy Court for the District of Connecticut on April 8, 2008. For the reasons set forth below, the motion for a stay pending appeal is being denied.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In 1989, Christopher McCarron ("McCarron") and Laffit Pincay, Jr. ("Pincay") (collectively, the "Appellees") filed actions against Vincent Andrews and Robert Andrews in the United States District Court for the Central District of California, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and also bringing state law claims for fraud. On July 30, 1992, a jury returned verdicts in favor of the Appellees on both their RICO and state law claims.[1] At the court's direction, the Appellees elected to be awarded damages on their RICO claims, and on October 28, 1993, the court entered judgment on those claims.

On February 28, 1994, the Appellants filed voluntary bankruptcy petitions. On June 20, 1994, the Appellees commenced

---

**1.** The jury awarded Pincay and McCarron $670,685 and $313,841 in compensatory damages, respectively, and $2.1 million and $1.18 million in punitive damages, respectively.

adversary proceedings in the United States Bankruptcy Court for the District of Connecticut to determine whether the judgment debts were non-dischargeable under 11 U.S.C. § 523(a).[2] On October 26, 1995, the bankruptcy court entered an order staying the proceedings until final and non-appealable judgments were entered in the Central District of California.

On January 9, 1998, the United States District Court for the Central District of California entered final judgments on the Appellees' RICO claims. The Appellants appealed those judgments to the United States Court of Appeals for the Ninth Circuit. On February 6, 2001, the Ninth Circuit reversed and vacated the judgments because the RICO claims were barred by the statute of limitations, but it did not disturb the jury verdicts on the Appellees' state law claims. *Pincay v. Andrews*, 238 F.3d 1106, 1110 (9th Cir.2001) (*"Pincay I"*), *cert. denied*, 534 U.S. 885, 122 S.Ct. 195, 151 L.Ed.2d 137 (2001). Therefore, on July 3, 2002, the district court entered judgments in favor of the Appellees on their state law claims. The Appellants appealed these judgments to the Ninth Circuit.[3] On March 16, 2005, the Ninth Circuit affirmed the judgments on the state law claims.[4] *Pincay v. Andrews*, 2005 WL 3782443 (9th Cir.2005), *cert. denied*, 546 U.S. 1061, 126 S.Ct. 799, 163 L.Ed.2d 628 (2005) (*"Pincay II"*).

On January 13, 2006, the stay in the bankruptcy court was lifted. On March 21, 2007, the Appellees filed a motion for summary judgment and the Appellants filed a cross-motion for summary judgment pursuant to a stipulation entered into by the parties and approved by the bankruptcy court. On April 8, 2008, the bankruptcy court granted the Appellees' motion for summary judgment, holding that the subject judgment debts were non-dischargeable based on the collateral estoppel effect of the judgments previously entered in the United States District Court for the Central District of California. *See In re Andrews*, 385 B.R. 496, 506–510 (Bankr. D.Conn.2008). Specifically, the bankruptcy court concluded that the issue of whether the Appellants committed actual fraud was already litigated and decided in the action in the Central District of California and was entitled to preclusive effect in the bankruptcy proceedings. In its April 8, 2008 order, the bankruptcy court also denied the Appellants' cross-motion for summary judgment, stating that even if the Appellees had failed to demonstrate that the Appellants were not entitled to prevail on their affirmative defense, then, at the very least, the Appellees had demonstrated the presence of genuine issues of material fact precluding summary judgment in favor of the Appellants on their cross-motions for summary judgment on their affirmative defense.[5] *Id.* at 504–5, 506.

**2.** Section 523(a)(2)(A) provides that a debtor is not discharged from any debt for money to the extent that it was obtained by actual fraud.

**3.** Although the appeal was untimely, the district court allowed the Appellants to proceed on the ground of excusable neglect. That decision was reversed by the Ninth Circuit. *See Pincay v. Andrews*, 351 F.3d 947 (9th Cir.2003). Upon a rehearing *en banc*, the Ninth Circuit affirmed the decision of the district court. *See Pincay v. Andrews*, 389 F.3d 853 (9th Cir.2004).

**4.** On appeal, the Andrews argued that California's statute of limitations barred the Appellees' claims. However, the Ninth Circuit noted that Andrews' argument amounted to an untimely attack on the instructions to the jury and the jury's findings.

**5.** The Appellants had argued that the Appellees' complaints were time-barred by Bankruptcy Rule 4007, which provides that a complaint brought under 11 U.S.C. § 523 must be filed within 60 days of the first date set for the meeting of creditors. The Appellees had argued that the doctrines of judicial estoppel

The bankruptcy court notified the parties that its order on the Appellees' motion constituted a final, appealable judgment. On April 30, 2008, the bankruptcy court denied the Appellants' request for a stay pending appeal.

## II. STANDARD OF REVIEW

■ Although most district courts considering whether to grant or deny a stay pending appeal from a bankruptcy court ruling have not explicitly addressed the appropriate standard of review, some district courts within the Second Circuit have reviewed bankruptcy court decisions to grant or deny a stay pending appeal only for an abuse of discretion. *See In re Singer Co. N.V.*, 2000 WL 257138, *5 (S.D.N.Y.2000); *Green Point Bank v. Treston*, 188 B.R. 9, 11 (S.D.N.Y.1995). In this case, the bankruptcy court concluded that the Appellants had failed to satisfy the criteria for a stay pending appeal and denied the Appellants' motion. However, the bankruptcy court did not give a detailed analysis of the factors evaluated in deciding whether a stay pending appeal is appropriate; instead, the bankruptcy court decided to grant a temporary stay pending appeal until this court decided the instant motion. Therefore, this court will review the bankruptcy court's decision *de novo*.

and waiver barred the Appellants from asserting a defense based on the untimeliness of the Appellees' complaints.

6. The parties state that the movant must demonstrate " 'a substantial possibility, although less than a likelihood of success' on appeal." *In re Country Squire Assocs. of Carle Place, L.P.*, 203 B.R. 182, 183 (2d Cir. BAP 1996) (quoting *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir.1993)). The Second Circuit has previously noted the various formulations courts have used to describe this factor. *See Mohammed v. Reno*, 309 F.3d 95, 100–01 (2d Cir.2002). This court utilizes the Second Circuit's most recent formulation.

## III. LEGAL STANDARD

■ The Second Circuit has held that courts must consider the following four factors in deciding whether to grant a motion for stay pending appeal:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*In re World Trade Center Disaster Site Litigation*, 503 F.3d 167, 170 (2d Cir.2007) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987)).[6] The party seeking the stay bears the burden of showing entitlement to the stay. *See United States v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir.1995). Some courts within the Second Circuit have held that all four factors must be satisfied before a stay is granted, *see In re Norwich Historic Preservation Trust, LLC*, 2005 WL 977067, *3 (D.Conn.2005) (citing cases), while other courts within the Second Circuit have held that courts must balance the factors to determine whether a stay is appropriate, *see In re Adelphia Communications Corp.*, 361 B.R. 337, 346–47 (S.D.N.Y.2007) (citing cases).[7] The Sec-

7. There is also disagreement among courts within the Second Circuit as to which factor is most salient in determining whether to grant a stay pending a bankruptcy appeal. Some courts within the Second Circuit have stated that the single most important factor is the likelihood of success on the merits. *See In re Baker*, 2005 WL 2105802, *3 (E.D.N.Y. 2005); *In re Holtmeyer*, 229 B.R. 579, 582 (E.D.N.Y.1999). However, several courts within the Second Circuit have stated that irreparable harm is the principal prerequisite for the issuance of a stay. *See In re Adelphia Communications Corp.*, 361 B.R. 337, 347 (S.D.N.Y.2007); *In re Klinger*, 2002 WL

ond Circuit has held that the factors should be evaluated on a "sliding scale" and "[t]he necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other stay factors." *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir.2006) (citing *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir.2002)).

## IV. DISCUSSION

### A. *Likelihood of Success*

The Appellants argue that the bankruptcy court erred by (1) granting summary judgment in favor of the Appellees despite finding that genuine issues of material fact existed with respect to the Appellants' affirmative defense, and (2) applying collateral estoppel principles to hold that a judgment based on violations of California fraud law was non-dischargeable under federal bankruptcy law.

With respect to the first argument, the Appellants correctly note that the bankruptcy court concluded that the Appellees created genuine issues of material fact as to whether the Appellants waived their Rule 4007 affirmative defense and as to whether they were prevented from raising that defense by the doctrine of judicial estoppel. *See In re Andrews*, 385 B.R. at 504–05, 506. Despite determining that genuine issues of fact existed with respect to this defense, however, the bankruptcy court granted summary judgment in favor of the Appellees based on the preclusive effect of the California judgments and issued a final judgment that the subject debts were non-dischargeable. The Appel-

lants argue that summary judgment should not have been granted in favor of the Appellees once the bankruptcy court concluded that genuine issues of material fact existed as to the Appellants' affirmative defense, but the remaining factual issues raised should have been resolved at trial before judgment was entered in favor of the Appellees.

The Appellees argue that the scheduling order entered by the bankruptcy court and signed by the parties gave the court "discretion" to conduct a trial on the issues raised in the Appellants' cross-motion. The order states that the Appellees "have elected to prosecute these adversary proceedings exclusively by means of the Motion for Summary Judgment provided for above, in lieu of the trial scheduled under the pretrial order," and that "[s]hould the Bankruptcy Court determine to conduct a trial on issues raised by the Cross Motion, such trial will be limited exclusively to the issues raised by the Cross Motion and Plaintiffs' opposition thereto." (Appellant Reply (Doc. No. 5), Ex. 3). Although the order states that the Appellees have waived the right to a trial in the event that their motion for summary judgment is denied, it does not state that the Appellants have waived the right to a trial in the event that their cross-motion for summary judgment is denied. Indeed, the record makes clear that the Appellants were not waiving the right to a trial if the court determined that there were genuine issues

1204958, *2 (D.Conn.2002); *In re Calpine Corp.*, 2008 WL 207841, *4 (Bankr.S.D.N.Y. 2008); *In re Traversa*, 2007 WL 1630606, *5 (Bankr.D.Conn.2007); *In re Perry H. Koplik & Sons, Inc.*, 2007 WL 781905, *1 (Bankr. S.D.N.Y.2007); *In re Koper*, 286 B.R. 492, 496–97 (Bankr.D.Conn.2002); *In re Altman*, 230 B.R. 17, 19 (Bankr.D.Conn.1999); *In re City of Bridgeport*, 132 B.R. 81, 83 (Bankr. D.Conn.1991). The Second Circuit has ex-

plained that, in evaluating the criteria on a motion to stay, "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay. Simply stated, more of one excuses less of the other." *Mohammed*, 309 F.3d at 101 (evaluating whether to grant a stay of removal to an alien pending appeal of an adverse habeas decision).

of material fact with respect to their affirmative defense.[8]

The Appellees also contend that the Appellants should have raised any arguments with respect to their affirmative defense in their objection to the Appellees' motion for summary judgment rather than in their cross-motion. However, the bankruptcy court explicitly instructed the Appellants to raise those arguments in a cross-motion. In response to counsel's argument that the Appellees' complaints were not timely filed, the bankruptcy court stated: "Then file a summary judgment motion, if that's what you believe. It would now be in the format of a cross motion and if you're right that they lose because they didn't timely file it, then that will be an answer." (*Id.*, Ex. 1 at 20). The Appellants should not be denied the opportunity for a trial on disputed issues of fact merely because the arguments with respect to the affirmative defense were raised by a cross-motion in accordance with the bankruptcy court's instructions rather than in an objection to the Appellees' motion.

Because the court finds persuasive the Appellants' argument that the bankruptcy court would have had to resolve the disputed issues of material fact that it concluded existed with respect to the Appellants' affirmative defense before determining that the subject debts were non-dischargeable, it concludes that the Appellants have made a strong showing that they are likely to succeed on the merits of their appeal. For this reason, the court need not reach the Appellants' arguments that the bankruptcy court erred in concluding that the judgments in the action in the United States District Court for the Central District of California (the "California Action") were entitled to preclusive effect,[9] and that the bankruptcy court erred in denying the Appellants' motion for summary judgment.

B. *Irreparable Injury*

The Appellants argue that they will suffer irreparable harm absent a stay because the Appellees will take post-judgment enforcement actions to collect on the judgments against the Appellants. Such actions could include garnishment of the Appellants' wages and efforts to recover any non-exempt or fraudulently transferred assets. The Appellants note that,

8. At oral argument before the bankruptcy court, counsel for the Appellants stated: "On the threshold issue, the lateness of the filing, if that can't be resolved by summary judgement and that required a trial, that would still trump a collateral estoppel finding if we're right. So you'd still have a trial on that." (Appellant Reply (Doc. No. 5), Ex. 1 at 19–20).

9. The Appellants argue that the bankruptcy court erred in concluding that the issue of "justifiable reliance," an element required to establish "actual fraud" under § 523(a)(2)(A), was resolved in the California Action. Specifically, the Appellants contend that the jury was able to find either "justifiable reliance" or the Appellants' "fiduciary status" as a prerequisite to holding Appellants liable under California law. Because, as the Ninth Circuit noted in *Pincay I*, the Appellees were provided with plain written disclosures of their inju-

ry, the Appellants argue that the jury's verdict on the state law fraud claims could only be based on the theory that justifiable reliance need not be shown if the Appellants were fiduciaries. However, the Appellants' argument is undermined by the following facts: (1) the jury made a specific finding of justifiable reliance on the Appellees' intentional misrepresentation claim (*see* Appellee Mem. Opp. (Doc. No. 8), Ex. D. at 17); (2) *Pincay II* upheld the jury's verdict on the state law claims; and (3) neither *Pincay I* nor *Pincay II* addressed the issue of whether justifiable reliance could be established under California law based on the evidence presented at trial. Thus, the Appellants are confronted with the existence of a final judgment in favor of the Appellees on their state law claims and an explicit finding of justifiable reliance by the jury.

under New York law, creditors can also seek the forced disposal of personal property. According to the Appellants, these actions would result in significant financial harm.

■ The court notes, however, that creditors' efforts to collect on a judgment during the pendency of an appeal generally do not constitute irreparable harm because debtors can be adequately compensated by monetary damages if they succeed on their appeal. *See In re Smithers*, 2005 WL 4030095, *3–4 (Bankr. S.D.Ohio 2005) (collecting cases). Here, the Appellants have not shown that the financial harm they would suffer absent a stay could not be fully remedied by monetary damages if they ultimately prevail.[10]

The Appellants also argue that execution efforts could result in harm to the management company they own and the family-owned businesses in which they are employed. Specifically, the Appellants contend that creditors could subpoena clients of the Appellants' businesses as a means of identifying executable assets and thus undermine the trust and confidence of their clients in the businesses.

■ The Second Circuit has held that "a threat to the continued existence of a business can constitute irreparable injury," *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 588 F.2d 24, 28–29 (2d Cir.1978). However, the injury must be "imminent, not remote or speculative." *Reuters Ltd. v. United Press Intern., Inc.*, 903 F.2d 904, 907 (2d Cir.1990). Here, the Appellants have not met their burden of demonstrating that any loss of reputation or goodwill that could result from creditors contacting clients in a search for executa-

ble assets would pose an imminent threat to the operation of their businesses. Therefore, the Appellants have not shown they will suffer irreparable injury.

### C. *Injury to Other Parties*

The Appellants argue that the Appellees will not be harmed by a stay because (1) the Appellees have already collected more money on their investments than they overpaid, and (2) the Appellants will continue to hold assets as they have for the past fourteen years, during which time there is no indication that their assets have diminished. Both arguments, however, ignore the harm to the Appellees resulting from the substantial delay in collecting on their judgments in the California Action. As the Appellees note, this litigation began in 1989, the jury rendered its verdict in 1992, and the judgments in favor of the Appellees on their state law claims were entered in 2002. Much of the delay in collection on those judgments is attributable to the automatic stay imposed as a result of the Appellants filing bankruptcy petitions. A further stay of the case would further harm the Appellees. *See In re Fairmont Communications Corp.*, 1993 WL 428710, *4 (Bankr.S.D.N.Y.1993) (internal citation and quotation marks omitted) (It is "well-settled precedent that delay caused to creditors receiving their payments is also a significant harm in warranting denial of a stay."). Thus, this factor weighs in favor of denying the stay.

### D. *Public Interest*

The Appellants argue that the public interest in ensuring a proper resolution of

---

**10.** The court notes that, in addition, the Appellants can seek to have other measures put in place to safeguard against amounts collected by the Appellees becoming unavailable to pay any such monetary damages. The court also recognizes that the Appellants have been ordered by the bankruptcy court not to transfer assets out of the ordinary course while the temporary stay is in effect.

the issues on appeal before debtors are deprived of their assets would be served by a stay. Because the court has concluded that the Appellants have made a strong showing that they are likely to succeed on the merits and that additional issues must be resolved by the bankruptcy court, the court finds merit in this argument.

However, the Appellees argue that the public interest in ensuring that the bankruptcy process is not improperly utilized to delay creditors from collection would be undermined by a stay in this case. Because the Appellants have managed to avoid payment on the judgments in the California Action for years, to a significant degree because of the automatic stay imposed as the result of the bankruptcy filings, the court also finds merit in this argument. Moreover, in the unusual circumstances present here, the public interest in supporting the Appellees' position outweighs the public interest in supporting the Appellants' position. The issue presented on appeal is in the nature of a procedural point, i.e. as a result of an unusual scheduling order all of the material issues were not resolved by the bankruptcy court before granting summary judgment in favor of the Appellees on their motion. The issue on appeal on which the court has concluded the Appellants are likely to prevail is not the substantive issue presented to the bankruptcy court by their motion for summary judgment, i.e. whether the Appellants are barred from presenting a defense based on the circumstances of the Appellees' complaint. On the other hand, the circumstances of this case present a textbook example of a situation where the public interest pointed to by the Appellees should be given significant weight. Thus, the court concludes that the public interest here weighs in favor of denying the motion for a stay.

* * * *

In sum, the court has concluded that the Appellants have not shown that they will be irreparably injured absent a stay or that the Appellees will not be injured by a stay. Failure to satisfy either of these requirements alone would be sufficient grounds to deny the motion under the approach adopted by many courts. Under the balancing approach adopted by other courts, however, the court must weigh the other factors. Although the court has concluded that the Appellants have made a strong showing that they are likely to succeed on the merits of their appeal on the issue of whether the bankruptcy court erred in granting summary judgment in favor of Appellees despite the existence of genuine issues of material fact as to the Appellants' affirmative defense, success on the merits of that appeal would not suggest a favorable outcome for the Appellants in the proceeding in bankruptcy court. The other three factors, i.e. irreparable injury, injury to other parties and where the public interest lies, weigh in favor of denying the motion for a stay. Thus, after weighing the four factors, the court concludes that the Appellants have not carried their burden of demonstrating entitlement to a stay. *See In re Adelphia Communications Corp.*, 333 B.R. 649, 659 (S.D.N.Y.2005) ("A party seeking a stay pending appeal carries a heavy burden."). Because the motion to stay is being denied, the court need not consider the issue of bond.

## V. CONCLUSION

For the reasons set forth above, Appellants' Motion for Stay Pending Appeal (Doc. No. 1) is hereby DENIED.

It is so ordered.