**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No. NC-11-1331-DHDo |
| ) | |
| ISTIAKALI BALOOCH, ) | Bk. No. 07-51118-ASW13 |
| ) | |
|                Debtor. ) | |
| _____ ) | |
| ) | |
| ISTIAKALI BALOOCH, ) | |
| ) | |
|                Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| DAVID A. BOONE; LEELA V. MENON, ) | |
| ) | |
|                Appellees. ) | |
| _____ ) | |

Submitted on January 20, 2012
at San Francisco, California

Filed - February 8, 2012

Appeal from the United States Bankruptcy Court
for the Northern District of California

Hon. Arthur S. Weissbrodt, Bankruptcy Judge, Presiding

_____

Appearances: Istiakali Balooch, Appellant, pro se;
David A. Boone, Appellee, pro se.

Before: DUNN, HOLLOWELL, and DONOVAN,[2] Bankruptcy Judges.

_____

[1]  This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2]  Hon. Thomas B. Donovan, United States Bankruptcy Judge for the Central District of California, sitting by designation.

After the bankruptcy court granted the motion to withdraw filed by counsel for a chapter 13[3] debtor, debtor appealed. We AFFIRM.

## I. FACTS

Appellant Istiakali Balooch filed a voluntary chapter 13 petition ("Petition") on April 18, 2007. Appellee David A. Boone of the Law Offices of David A Boone was Mr. Balooch's bankruptcy attorney of record. Appellee Leela V. Menon was an attorney in the Law Offices of David A. Boone who did work on behalf of Mr. Balooch in the chapter 13 case.

Two days before the Petition was filed, Mr. Balooch and Mr. Boone signed a document titled "Rights and Responsibilities of Chapter 13 Debtors and Their Attorneys" ("Fee Agreement"), which, as its name suggests, set out the duties of Mr. Balooch and Mr. Boone for purposes of prosecuting Mr. Balooch's chapter 13 case. The Fee Agreement also established the attorney fees to be charged by Mr. Boone. Under the Fee Agreement, Mr. Boone was authorized to charge $5,600 as "initial fees," an enhancement over his $2,750 fee for a basic case based on the inclusion of some or all of the following factors in Mr. Balooch's case: use of "the compromise plan," involvement of claims relating to one or more parcels of real property, involvement of vehicle loans or leases, and the existence of an operating business. The Fee Agreement was specific about when Mr. Boone would seek additional fees as well as how much those

---

[3] Unless otherwise specified, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

additional fees would be.

The bankruptcy court approved the initial fees to Mr. Boone in the amount of $5,600 by order entered February 27, 2008. Thereafter, in accordance with the Fee Agreement, Mr. Boone sought, and the bankruptcy court approved, supplemental compensation (1) in the amount of $600 based upon a required response to filing of a motion for relief from the automatic stay more than one year following the petition date, (2) in the amount of $400 based upon the filing of a post-confirmation plan modification, and (3) in the further amount of $600 based upon a required response to the filing of a second motion for relief from the automatic stay ("GMAC Motion") more than one year following the petition date. The fees the bankruptcy court approved for services Mr. Boone rendered in Mr. Balooch's case totaled $7,200 as of May 24, 2010.

The GMAC Motion, filed March 17, 2010, resulted in the underlying dispute which led to this appeal. Notwithstanding the confirmation of Mr. Balooch's chapter 13 plan, which provided that the prepetition property tax obligation on his residence would be paid through the plan, GMAC paid those taxes as an advance. To address the "default" created by the improper tax advance, GMAC imposed an escrow account and increased Mr. Balooch's monthly payment by nearly $1,000. When Mr. Balooch failed to make the increased monthly payment, GMAC filed the GMAC Motion asserting that Mr. Balooch was in default on his post-petition mortgage payments.

No fewer than seven hearings were scheduled to address the GMAC Motion. Following the July 22, 2010, continued hearing on the

3

GMAC Motion, the bankruptcy court directed Mr. Balooch to continue to make "interim" payments of $1,410.82, the amount of Mr. Balooch's regular monthly payment to GMAC prior to the imposition of the escrow, during the pendency of the proceedings on the GMAC Motion. Ultimately, on December 15, 2010, the bankruptcy court took the GMAC Motion "off calendar," but provided that either party could restore the GMAC Motion to the calendar on 15 days' notice. Notably, GMAC was not granted relief from the automatic stay.

This "resolution" of the GMAC Motion did not resolve Mr. Balooch's dispute with GMAC. Although GMAC did amend its proof of claim to add the erroneous tax advance as part of its prepetition claim, it is apparent from the record that GMAC made little, if any, effort to correct its accounting with respect to the mortgage, with the result that improper late charges and other costs continued to suggest that Mr. Balooch remained in default. To compound the hardship to Mr. Balooch, GMAC reported these alleged defaults to credit reporting agencies, which Mr. Balooch contends has hampered his ability to refinance GMAC's mortgage.

Through his letter dated December 15, 2010 ("Boone Letter"), Mr. Boone informed Mr. Balooch that the GMAC Motion was taken off calendar, and, in effect, that he would not be taking action with respect to continued accounting issues with GMAC:

> We were informed by [GMAC's counsel] that they were yet to hear from their client but expected that the delinquent reporting on your credit report would not be corrected by his client, GMAC. He urged that you explore refinance options that would not require the reversal of these items. You may also wish to try to correct the matter by dealing directly with GMAC.

4

On December 21, 2010, the bankruptcy court received correspondence dated December 13, 2010[4] ("December 2010 Letter"), from Mr. Balooch addressed to the bankruptcy judge assigned to his case. In the December 2010 Letter, Mr. Balooch informed the bankruptcy court of the specifics of his dispute with GMAC: "My objective is to refinance the property. . . ."

> Past months I have waited for GMAC Mortgage to remove late reporting on my credit history. In order to be approved for the loan pending with Vitek Mortgage the reversal of negative reports by GMAC Mortgage must be attained.

Mr. Balooch did not copy Mr. Boone with the December 2010 Letter.

After the GMAC Motion was taken off calendar, Mr. Boone sent a letter dated January 28, 2011, to GMAC's counsel outlining Mr. Balooch's concerns, confirming that beginning in December 2009 Mr. Boone had provided information to three separate attorneys for GMAC to address the accounting issues "with little progress or resolution," and stating that Mr. Balooch was authorized to engage in direct communication with GMAC's counsel and with appropriate officers of GMAC "to resolve the outstanding accounting issues to avert the necessity for the matter to be re-set on the court's calendar."

By his letter to Mr. Balooch dated February 11, 2011 ("February 2011 Letter"), Mr. Boone advised Mr. Balooch that as a result of the efforts Mr. Boone had undertaken in defense of the

---

[4] It appears from the record that the Boone Letter was attached to the December 2010 Letter, suggesting that the December 2010 Letter actually was drafted on or after December 15, 2010.

5

GMAC Motion, the automatic stay remained in place, and GMAC could not proceed with any foreclosure activity absent further allegations of default and restoration of the GMAC Motion to the calendar. Mr. Boone stated that he had been "more than attentive" to Mr. Balooch's file and had addressed all bankruptcy issues. Finally, Mr. Boone informed Mr. Balooch that he would not continue representation of Mr. Balooch in connection with the GMAC accounting dispute:

> We understand your concerns center on the derogatory commentary in your credit report and we confirm we have always advised you to follow the credit report dispute processes but you advised you were reluctant to do so believing this avenue would somehow hamper and hinder your goals.
> . . .
> You may wish to hire alternate Counsel to address your lender's internal credit reporting practices.

On March 18, 2011, the bankruptcy court received correspondence from Mr. Balooch dated March 14, 2011 ("March 2011 Letter") addressed to the bankruptcy judge assigned to his case. In the March 2011 Letter, Mr. Balooch restated the dispute to the bankruptcy court, pointing out that GMAC ignored (1) the provision of the confirmed plan by paying prepetition property taxes through an advance[5] and (2) the court's order setting Mr. Balooch's payment at $1,410.82, by continuing to impose a forced tax impound account

---

[5] The plan is silent as to postpetition property taxes. It appears from the record that GMAC made a further advance for postpetition property taxes during the pendency of proceedings on the GMAC Motion, which Mr. Balooch, through Mr. Boone, repaid promptly upon being informed of the advance. Accounting issues were created and continue to exist with respect to this advance as well.

6

on Mr. Balooch which increased his monthly payment amount. Mr. Balooch requested that the bankruptcy court resolve his dispute with GMAC "by holding the lender responsible for unfair debt collection action filed." Mr. Balooch concluded with an apology for "any inconvenience [he] may have caused," but explained that his attorneys had informed him during a telephone conference that they would not be helping him further in the dispute. Mr. Balooch did not copy Mr. Boone with the March 2011 Letter. Attached to the March 2011 Letter was a letter from Mr. Balooch to Mr. Boone, dated March 11, 2011, requesting assistance in resolving his dispute with GMAC resulting from the wrongful tax advance.

On May 5, 2011, Mr. Boone filed a motion to withdraw ("Withdrawal Motion") as counsel in Mr. Balooch's chapter 13 case. In the Withdrawal Motion, Mr. Boone recounted the procedural history of the GMAC Motion, pointing out that he had raised with the bankruptcy court Mr. Balooch's concerns regarding GMAC's derogatory credit reporting:

> While the Court was unwilling to order the lender to amend its reporting to the credit bureaus, the Court suggested the lender provide a figure for cure by [Mr. Balooch] to enable the retraction of the damaging entries on his credit report. This amount was never provided by [GMAC] or perhaps their policies and procedures prohibited same.

Mr. Boone asserted that he had addressed all of the bankruptcy issues in connection with the GMAC Motion and that he "successfully defended" the GMAC Motion. Further, after the GMAC Motion came off calendar, Mr. Boone attempted to assist Mr. Balooch in his dispute with GMAC by writing letters to GMAC's counsel seeking clarification

7

requested by Mr. Balooch and by authorizing direct contact between Mr. Balooch and a GMAC representative. Nevertheless, Mr. Balooch was dissatisfied with Mr. Boone's services as evidenced by his sending the December 2010 Letter and the March 2011 Letter to the bankruptcy court without Mr. Boone's knowledge or approval. Mr. Boone asserted that in connection with the December 2010 Letter, Mr. Balooch attached confidential correspondence from Mr. Boone, reflecting a breakdown in the attorney-client relationship. Finally, Mr. Boone informed the bankruptcy court that Mr. Balooch had filed complaints regarding GMAC with the Comptroller of the Currency and the Department of Corporations, referencing Ms. Menon as his counsel in making the complaints, despite the fact that neither Ms. Menon nor Mr. Boone represented Mr. Balooch in connection with the complaints.

Mr. Boone asserted that by his conduct Mr. Balooch had created a conflict which rendered it unreasonably difficult for Mr. Boone to carry out his employment effectively, such that Mr. Boone should be allowed to withdraw pursuant to either Rule 3-700(C)(1)(d), Rule 3-700(C)(2), or Rule 3-700(C)(6) of the California Rules of Professional Conduct.[6]

---

[6] The relevant provisions of the Cal. Rules of Prof. Conduct provide for the permissive withdrawal of counsel if the client "by other conduct renders it unreasonably difficult for the [attorney] to carry out the employment effectively," when the "continued employment is likely to result in a violation of these rules or of the State Bar Act," or when the "[attorney] believes in good faith, in a proceeding before a tribunal, that the tribunal will find the existence of other good cause for withdrawal."

In his response ("Response") to the Withdrawal Motion, Mr. Balooch complained that Mr. Boone discontinued his services to Mr. Balooch before seeking permission from the bankruptcy court to withdraw. He attached the February 2011 Letter as an exhibit to the Response. Mr. Balooch then chronicled in the Response his dissatisfaction with Mr. Boone's services in connection with the GMAC dispute, asserting that Mr. Boone failed to enforce GMAC's compliance with the terms of the confirmed plan, failed to pursue remedies against GMAC's attorneys when they refused to make any effort to resolve the accounting issues, and allowed GMAC to increase his monthly payments and to accrue late fees and attorney fees. Mr. Balooch further complained that an issue had arisen in the case relating to a secured vehicle which Mr. Boone failed to address. With respect to the assertion in the Withdrawal Motion that Mr. Balooch inappropriately designated Ms. Menon as his counsel in his complaint with the Comptroller of the Currency, Mr. Balooch explained that he filed the complaint on the advice of Ms. Menon, and on that basis he identified her in the complaint as his attorney. He further explained that he used his own e-mail address in the complaint only because he was required to provide an e-mail address and did not know Ms. Menon's. Mr. Balooch concluded by requesting that the bankruptcy court deny the Withdrawal Motion and refund to Mr. Balooch attorneys fees previously paid to Mr. Boone for services that Mr. Balooch asserted were not provided.

At the hearing on the Withdrawal Motion held June 20, 2011, the bankruptcy court noted for the record that Mr. Balooch had not

appeared, and then granted the Withdrawal Motion. The order authorizing Mr. Boone's withdrawal was entered June 23, 2011. Mr. Balooch filed his notice of appeal on June 27, 2011.

At oral argument Mr. Balooch advised the Panel that his dispute with GMAC had been resolved and his credit report corrected.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Whether the bankruptcy court abused its discretion when it granted the Withdrawal Motion.

## IV. STANDARDS OF REVIEW

Whether to grant a motion to withdraw as counsel is a matter within the discretion of the bankruptcy court, subject to review on appeal for an abuse of that discretion. See U.S. v. Carter, 560 F.3d 1107, 1113 (9th Cir. 2009); LaGrand v. Stewart, 133 F.3d 1253, 1269 (9th Cir. 1998).

We apply a two-part test to determine whether the bankruptcy court abused its discretion. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009)(en banc). First, we consider de novo whether the bankruptcy court applied the correct legal standard to the relief requested. Id. Then, we review the bankruptcy court's fact findings for clear error. Id. at 1262 & n.20. We must affirm the bankruptcy court's fact findings unless we conclude that they are "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" Id. at

10

1262.

Under the abuse of discretion standard, we must have a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached before reversal is appropriate. Hopkins v. Cerchione (In re Cerchione), 414 B.R. 540, 545 (9th Cir. BAP 2009).

## V. DISCUSSION

Although Mr. Balooch has appealed the order granting the Withdrawal Motion, both the Response and his reply brief on appeal reflect that he was unhappy with Mr. Boone's representation. Nowhere in his submissions to the bankruptcy court or to this Panel does Mr. Balooch suggest he wants Mr. Boone to continue as his attorney of record in the bankruptcy case. Thus, we find no basis upon which we can determine that the bankruptcy court committed a clear error in judgment when it authorized Mr. Boone to withdraw from his representation of Mr. Balooch in the chapter 13 case.

It appears Mr. Balooch has appealed the order granting the Withdrawal Motion because the bankruptcy court failed to require Mr. Boone to disgorge the compensation he had already received in the case. "I am seeking a refund and other payments as [the] court deems necessary." Reply Brief at page 2, paragraph (H). "It is very important that the court award the reimbursement of David A. Boone's fees [of] $7,200.00. I require daily medications that I now have to purchase. . . . Prior to my [bankruptcy] filing I did not have the above mentioned medications cost. I am unable to afford additional cost for attorney." Id. at page 4.

11

Any issue Mr. Balooch has with respect to compensation awarded to Mr. Boone is not properly before us in our consideration of whether the bankruptcy court abused its discretion when it authorized Mr. Boone to withdraw as counsel for Mr. Balooch. While the Response did include a request for a refund of fees that were paid for "services not provided," Mr. Balooch did not appear[7] at the hearing scheduled to consider the Withdrawal Motion and the Response in order to press his request. In our view, the request that Mr. Boone disgorge previously awarded fees was collateral to the determination of whether it was appropriate to allow Mr. Boone to withdraw as counsel for Mr. Balooch in the bankruptcy case, such that the bankruptcy court was not required to consider the request in conjunction with the Withdrawal Motion.

Four orders approving compensation to Mr. Boone were entered by the bankruptcy court prior to the time Mr. Boone filed the Withdrawal Motion. Mr. Boone served Mr. Balooch with each application for compensation at the time it was filed. We observe that Mr. Balooch never filed a timely objection contemporaneous with the pending consideration of the compensation applications. Nor did he appeal any of the compensation orders, entered by the bankruptcy court.

---

[7] Mr. Balooch appears to suggest on appeal that he was unable, for medical reasons, to attend the hearing. However, there is nothing in the record which suggests that Mr. Balooch made any effort to obtain a continuance of the hearing on the Withdrawal Motion, or that he sought reconsideration of the order on the Withdrawal Motion on the basis that he medically was unable to attend the hearing.

12

At oral argument Mr. Balooch asserted that if he could not get back the fees he had paid to Mr. Boone, then he wanted Mr. Boone to continue to provide services to him. Mr. Boone stated at oral argument that the only outstanding matter in Mr. Balooch's case was Mr. Balooch's requirement to make plan payments. Oral argument is not the time to "negotiate" a remedy not sought from the bankruptcy court.

## VI. CONCLUSION

Mr. Balooch does not want Mr. Boone to serve as his counsel in the bankruptcy case. Any dissatisfaction Mr. Balooch has regarding compensation paid to Mr. Boone during the pendency of Mr. Balooch's bankruptcy case is not properly before the Panel in this appeal. While we sympathize with Mr. Balooch for the apparent, inappropriate treatment he has received at the hands of GMAC, which he has since resolved,[8] we do not see any abuse of discretion in the

---

[8] Two weeks prior to oral argument, Mr. Balooch filed a "Motion and Request to Submit New Evidence." Attached to this document were copies of three letters from GMAC Mortgage. The first, dated July 14, 2011, prompted by an inquiry by the State of California Department of Corporations ("Corporations Department") dated July 14, 2011, was addressed to Mr. Balooch. It confirmed removal of the escrow account and the issuance of an electronic notice "to the four major credit bureaus to update their records to reflect all payments since the Bankruptcy filing as paid on time." The second, dated September 7, 2011, was addressed to the Corporations Department. It clarified that GMAC Mortgage no longer was asserting outstanding late charges with respect to Mr. Balooch's account, and it confirmed that the account "currently reflects a due date of October 1, 2011." It also stated that GMAC Mortgage was entitled to collect $950.00 in outstanding fees resulting from the proof of claim and motion for relief filed with the Bankruptcy court. The third letter, dated November 16, 2011, was addressed to

(continued...)

13

bankruptcy court's decision to grant the Withdrawal Motion. We therefore AFFIRM the bankruptcy court's order granting the Withdrawal Motion.

---

[8](...continued)
Mr. Balooch. It advised that, in response to a further inquiry from the Corporations Department, GMAC Mortgage had decided both to remove the $950.00 outstanding fees from Mr. Balooch's account and to withdraw the GMAC Motion.

Also attached to the document was another copy of the Disclosure of Compensation filed in the bankruptcy case, previously included in Mr. Balooch's excerpts of record, this time with an additional paragraph circled.

We understand the purpose of the document and its attachments to be to emphasize Mr. Balooch's position that Mr. Boone did not resolve Mr. Balooch's accounting and credit reporting dispute with GMAC. Under the circumstances, we find no harm in granting Mr. Balooch's motion to supplement the record on appeal.

14